417 P.2d 667

Daisy Helen KINSLEY, sometimes known as Helen D. Kinsley, Individually and as Executrix of the Estate of Otho V. Kinsley, aka Otho Verne Kinsley, Deceased, Plaintiff and Appellant,

v.

Lewis H. LARSEN, and Dorothy G. Larsen, his wife, Individually and dba Larsen Enterprises, and Belco Petroleum Corporation, a corporation, Defendants and Respondents.

No. 10339.

Supreme Court of Utah.

Aug. 23, 1966.

Moyle & Moyle, Verle C. Ritchie, Salt Lake City, for appellant.

Ballif & Ballif, George E. Ballif, Provo, for Belco Petroleum Corp.

H. H. Halliday, Salt Lake City, for Larsens.

SWAN, District Judge:

Daisy Helen Kinsley, appellant herein, brought this suit individually and as Executrix of the Estate of Otho V. Kinsley, her deceased husband. She seeks to recover money of the deceased which was paid by defendant, Belco Petroleum Corporation, to defendant, Lewis H. Larsen, who received the money purportedly as agent for the deceased, Otho V. Kinsley. This appeal is from a summary judgment dismissing plaintiff's complaint with prejudice as to defendant, Belco Petroleum Corporation, and a finding that Larsen was Kinsley's agent and was properly given Kinsley's money by Belco. The controversy arises due to the retention by Larsen for his own use of a portion of Kinsley's share, which the Estate now seeks to recover. It is a admitted that Larsen owes plaintiff the sum of $77,599.89, and Larsen is not a party to the appeal.

The defendant, Lewis H. Larsen, and the deceased, Otho V. Kinsley, each owned a one-half undivided interest in certain royalties and working interests under oil and gas leases of the State of Utah, in lands in San Juan County, Utah. The defendant, Belco Petroleum Corporation, desired to purchase these interests from Larsen and Kinsley; and Kinsley, a resident of Tucson, Arizona, authorized Larsen to represent his interests during the negotiations. A telegram was received by Larsen dated February 15, 1962, which stated:

"Pursuant to our telephone call this evening, this will be your authority to dispose of our interest at not less than $160,000 or any amount greater for which you dispose of your interest. Otho V. Kinsley."

Prior to the completion of the transaction with Belco, various assignments and other documents necessary for its completion were sent by Belco directly to Kinsley, who executed and then delivered them directly to Larsen. At the time the transaction was completed, on or about March 22, 1962, all of the necessary documents were in Larsen's possession. These documents were turned over to Belco in exchange for two checks, both made payable to "Lewis H. Larsen, as agent," and both dated March 22, 1962. One check was for $318,000 and the other for $66,000, or a total of $384,000 as payment in full. Kinsley's share of the total purchase price was one-half of this amount or $192,000. In a letter dated March 26, 1962, Larsen wrote to Kinsley informing him that "it appears that the deal will be closed for the full amount of $192,000." Larsen then asked Kinsley if it would be possible to retain $100,000 of Kinsley's share as a loan for about nine months. Kinsley died

on March 28, 1962. In a letter dated March 31, 1962, Larsen sent a letter to Kinsley with a check for $92,000 and a promissory note for $100,000 payable in nine months at 6% interest. Mrs. Kinsley obtained payment on the $92,000 check and kept the promissory note.

Plaintiff argues that, even if Larsen had authority to sell the interest of Kinsley, he was not authorized to receive payment of Kinsley's share of the proceeds, a total of $192,000, nor to retain $100,000 of that amount on loan. Since Larsen has only paid $22,400 on the note, it is plaintiff's position that Belco is liable for the $77,599.89 still due and owing as a result of their wrongful payment to Larsen of Kinsley's share. The trial court concluded that,

> "* * * the aforesaid telegram, dated February 15, 1962, constitutes an appointment of Lewis H. Larsen, by Otho V. Kinsley, as the latter's agent to sell the mineral interest above referred to, and to receive payment therefor from defendant, Belco Petroleum Corporation; that there is no other material issue of fact between plaintiff and defendant, Belco Petroleum Corporation, and that defendant, Belco Petroleum Corporation's motion for summary judgment of dismissal of plaintiff's complaint as to that defendant should be granted."

Plaintiff argues that the telegram, in light of other evidence and the inferences to be drawn therefrom at the time of the hearing on the motion for summary judgment, does not constitute sufficient authority, as a matter of law, for Belco to pay the purchase price for Kinsley's property to the defendant, Lewis H. Larsen, as agent. It is pointed out by plaintiff that in the past Belco had made royalty payments under the same leases involved in this sale, direct to Kinsley in Tucson, Arizona, instead of through Larsen; that the documents which required Kinsley's execution to transfer his interest in the leases were sent directly by Belco to Kinsley, and that payment should have followed the same pattern; that Kinsley was never directly informed by Belco that payment was to be made to Larsen; and that in light of these circumstances and absent any showing of express authority, the scope of such authority is an issue of fact for jury determination.

The pleadings and affidavits before the court indicate, however, that those prior royalty payments from Belco to Kinsley were made directly to Kinsley as a result of directions given to Belco over a year before this sale was completed, and in no way purported to pertain to the manner in which the proceeds of a future sale should be distributed—the former royalty payments and the subsequent sale involve separate and distinct transactions. In considering the fact that Belco sent documents directly to Kinsley to be executed,

it should be noted that instead of being returned directly to Belco they were sent to Larsen for him to use as agent in disposing of Kinsley's interest. Kinsley's interest was a separate ownership in no way requiring a signature or other authorization from Larsen. This indicates some preference by Kinsley to not deal directly with Belco in this transaction. In view of Kinsley's preference to deal through Larsen, if Larsen had transferred those documents to Belco without first obtaining full payment for the interest they represented, it would have been just as careless as if an escrow agent were to release documents entrusted to him without first receiving the consideration therefor.

There was little reason for Belco to directly notify Kinsley as to the manner of payment in view of the broad authority Kinsley gave in the telegram to Larsen "to dispose of our interest." The words "to dispose of" convey the idea of bringing the transaction to a conclusion, not merely arriving at a final settlement figure, or setting up of other terms. The authority in the telegram "to dispose of *our* interest," implies an agency in Larsen to deal with Kinsley's interest as he would his own. Larsen would not transfer his own assignments without having received payment.

The deposition of Larsen was also before the court at the hearing on the motion for summary judgment. The deposition contained evidence to two prior transactions which Larsen handled for Kinsley in a similar manner as he did the present transaction, each time having received Kinsley's share of the proceeds and forwarding it on to Kinsley, and in these other transactions, there was no authorization by telegram or other writing. No contention was ever made by Kinsley in these other transactions that the money was improperly paid to Larsen. Plaintiff argues that this evidence is inadmissable because it violates the "dead man's statute," 78–24–2(3), Utah Code Annotated, 1953. Whether the trial court considered this evidence does not appear clear from its order, but is of no consequence in view of our decision that the other evidence before the court, as a matter of law, leaves no genuine issue as to any material fact. There is no indication, furthermore, that the trial court relied, nor do we rely, on the subsequent silence of plaintiff to show that Larsen had authority to receive the money.

Plaintiff argues that as a matter of law Belco had no authority to make payment to Larsen as agent because under 58–1–8, Utah Code Annotated, 1953, a power of attorney to convey an interest in real estate must be in writing and recorded, and Larsen had no such recorded power of attorney. Since the documents conveying Kinsley's interest had been duly executed by Kinsley personally, Larsen hav-

ing merely handled the transaction, the statute does not apply.

Judgment affirmed. Costs to respondents.

McDONOUGH, CROCKETT and CALLISTER, JJ., concur.

WADE, J., heard the arguments, but died before the opinion was filed.

HENRIOD, C. J., having disqualified himself, does not participate herein.